AMY J. BENJAMIN (AB6886)
BENJAMIN LAW PC
111 EAST 14TH STREET
SUITE 469
NEW YORK, NEW YORK 10003
*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NOTHING HEAVY, INC.,<br><br>                              Plaintiff<br><br>-against-<br><br>CHARLES LEVINSON AS TRUSTEE UNDER THE ARTHUR AND MADELYN REVOCABLE TRUST UNDER DECLARATION OF TRUST DATED NOVEMBER 29, 1990, ROBIN ROSELUND AS EXECUTRIX OF THE ESTATE OF LOIS MALEMAN f/k/a LOIS BROWN, ROBIN ROSELUND AS EXECUTRIX OF THE ESTATE OF NORMAN LEVINSON and BERTRAM LEVINSON FAMILY, LLC,<br><br>                              Defendants. | 10cv3466(GED) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE COMPLAINT**

## TABLE OF AUTHORITIES

**Cases**

*Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 531 F.Supp.2d 620 (S.D.N.Y. 2008) .......................... 8

*General Motors Corp. v. Cadillac Club Fashions, Inc.*, 22 U.S.P.Q.2d 1933 (T.T.A.B. 1992) .......................... 6

*Idaho Potato Commission v. Washington Potato Commission,* 410 F. Supp. 171 (D. Id. 1975) ................... 7

*In re Initial Publ. Offering Secs. Litig.*, 383 F.Supp.2d 566 (S.D.N.Y. 2005) ................................... 8

*In re Sadia, S.A. Secs. Litig.*, 643 F.Supp.2d 521 (S.D.N.Y. 2009) ............................................. 7, 8

*Martinez v. Ravikumar*, 616 F. Supp.2d 455 (S.D.N.Y. 2009) ....................................................... 7

*Secular Org. for Sobriety, Inc. v. Ullrich*, 213 F.3d 1125 (9th Cir. 2000) .......................................... 6

*Total Petroleum Puerto Rico Corp. v. TC Oil, Corp.*, 634 F.Supp.2d 213 (D.P.R. 2009) ............................. 5, 7

**Statutes**

15 U.S.C. §1051(b)(3)(A) ............................................................................................................ 9

15 U.S.C. §1119 ......................................................................................................................... 6

15 U.S.C. §1141(5) ..................................................................................................................... 9

37 C.F.R. §2.117 ........................................................................................................................ 6

37 C.F.R. §2.33(b)(2) ................................................................................................................. 9

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 7, 10

Fed. R. Civ. P. 12(b)(7) ......................................................................................................... 4, 10

Fed. R. Civ. P. 19(a)(1)(A) ...................................................................................................... 5, 7

**TABLE OF CONTENTS**

I    INTRODUCTION AND BACKGROUND ................................................................................................ 1

II    ARGUMENT ........................................................................................................................................ 4

    A.    THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(7) OR IN THE ALTERNATIVE PLAINTIFF SHOULD BE ORDERED TO ADD MICHAEL FEUCHT AS A PARTY ................ 4

    B.    THE COMPLAINT SHOULD ALSO BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6) ................... 7

III    CONCLUSION ................................................................................................................................... 10

**Other Authorities**

Trademark Manual of Examining Procedure §804.01 (2009) .......................................................................... 9

Trademark Manual of Examining Procedure §804.02 (2009) .......................................................................... 9

Trademark manual of Examining Procedure §804.05 (2009) .......................................................................... 9

Defendants Charles Levinson, as Trustee Under the Arthur and Madelyn Levinson Revocable Trust Under Declaration of Trust Dated November 29, 1990, Robin Roselund, as Executrix of the Estate of Lois Maleman f/k/a Lois Brown[1], Robin Roselund, as Executrix of the Estate of Norman Levinson and Bertram Levinson Family, LLC (collectively, the "Levinson Family"), hereby move to dismiss the Complaint of Plaintiff Nothing Heavy, Inc. ("Plaintiff") pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

## I INTRODUCTION AND BACKGROUND

This is a dispute over the trademark for a restaurant.  However, it is more than just a trademark dispute.  It is the story of an extended family's rights to its heritage and a fight over a landmarked, iconic piece of New York City history.

The members of the Levinson Family are the direct descendants and heirs of Bessie and Joseph Levinson, who purchased the land at 210-212 Tenth Avenue in New York City (the "Property") in the early 1900s.  Bessie and Joseph Levinson had four children:  Arthur, Lois, Norman and Bertram, who inherited the Property from their parents and passed it on to the current members of the Levinson Family upon their deaths (the "Original Heirs")[2].

In the early 1930s, Nathan Heller, Bessie Levinson's brother, placed a diner on the Property and began operating it under the trademark EMPIRE DINER.  Arthur Levinson began working with his Uncle Nathan at the EMPIRE DINER at the age of 16.  Arthur Levinson quickly rose to become the manager of the EMPIRE DINER.  In or around 1950, Arthur Levinson formed a partnership with two other men and purchased the EMPIRE DINER business, trademark, goodwill and the building itself from Nathan Heller.

---

[1] The Estate of Lois Maleman f/k/a Lois Brown has been fully probated and is closed.  Robin Roselund inherited the entire estate.  Accordingly, this defendant has been improperly identified.
[2] Norman Levinson passed away in 1997.  Lois Maleman f/k/a Lois Brown passed in 2008.  Bertram Levinson passed away on July 29, 2009.  Arthur Levinson passed away on February 1, 2010.

1

Approximately one year later, Arthur Levinson bought out his partners and became the sole proprietor of the EMPIRE DINER.[3]

Except for when he served in the Army during World War II, Arthur Levinson worked at, managed and/or operated the EMPIRE DINER until he retired in 1974.  During that time, the EMPIRE DINER became very successful and popular[4].  Celebrities and other famous people such as Albert Einstein, Eleanor Roosevelt and Leonard Bernstein frequently dined at the EMPIRE DINER.

Although he was retiring, Arthur Levinson fully intended for the EMPIRE DINER to continue operating and serving patrons.  To that end, he searched for someone to lease the Property and continue running the diner under the EMPIRE DINER trademark.  The initial lessee failed to operate the EMPIRE DINER according to Arthur Levinson's standards.  Accordingly, he cancelled the lease and began searching for another lessee to operate the EMPIRE DINER business.

The EMPIRE DINER remained closed for a short period of time while Arthur Levinson searched for a new tenant.  Ultimately, the Property was leased and an implied license to use the EMPIRE DINER trademark was granted to Richard Ruskey, Carl Laanes and Jack Donia, who formed the Plaintiff.  Pursuant to the lease and implied license, the EMPIRE DINER re-opened for business in 1976.  Until recently, Plaintiff operated the EMPIRE DINER under the EMPIRE DINER trademark pursuant to the leases and lease amendments identified at paragraph 42 of the Complaint.  In or about 2004, the shares of Plaintiff were transferred to two NHI employees who had been working at the EMPIRE DINER since the mid-1980s -- Renate Gonzalez and Mitchell Woo.

Plaintiff made virtually no changes to the décor or style of the EMPIRE DINER.  During Plaintiff's operation of the EMPIRE DINER, the reputation and popularity of the EMPIRE DINER continued to grow.

---

[3] The Original Heirs owned the Property as tenants-in common upon the death of Bessie and Joseph Levinson.  In 1990, they formed a partnership to hold the Property.  Arthur Levinson contributed the EMPIRE DINER to the partnership and managed the Property and the EMPIRE DINER on behalf of his siblings.  Charles Levinson, Arthur's son is now the manager of the Levinson Family's holdings.
[4] Arthur Levinson is credited with the idea of the free coffee refill which is available at all diners today.

2

Movies, television shows and commercials were frequently filmed at the EMPIRE DINER. Celebrities continued to frequent the EMPIRE DINER. The Property and the EMPIRE DINER received landmark status from the New York City Landmarks Preservation Commission.

Plaintiff's lease was not renewed and expired on December 31, 2009. Plaintiff illegally maintained possession of the Property beyond the expiration of its lease and continued to provide restaurant services under the EMPIRE DINER trademark until May 21, 2010[5]. The Levinson Family has entered into a new lease and implied trademark license with a third party. It is expected that the diner will re-open shortly with the new tenant providing restaurant services under the EMPIRE DINER trademark.

On or about May 30, 2002, and without the Levinson Family's knowledge or permission, Plaintiff filed an application to register the mark EMPIRE DINER for restaurant services with the U.S. Patent and Trademark Office ("PTO") which was assigned Serial No. 76/413,892. (Cplt ¶57). When the Levinson Family discovered that Plaintiff had filed an unauthorized trademark application, it insisted that Plaintiff abandon it. (Cplt. ¶58). Pursuant to the terms of an Amendment to Lease dated January 1, 2003 ("2003 Lease Amendment"), Plaintiff withdrew the pending application to register THE EMPIRE DINER. Specifically, the 2003 Lease Amendment stated:

> "[i]mmediately upon the execution and delivery of this Amendment to Lease, Lessee shall withdraw its pending application to the United States Trademark Office for the registration of the federal service mark 'Empire Diner,' and **covenants not to re-file or otherwise pursue such application.**"

(2003 Lease Amendment ¶15; emphasis added)[6].

In or about 2007, and again without the Levinson Family's knowledge or permission, Plaintiff began negotiating with third parties for the purpose of opening additional diners under the EMPIRE

---

[5] Prior to vacating the Property on May 21, 2010, Plaintiff removed certain fixtures and other items, thereby vandalizing the Property in breach of the lease and causing the Property to be in violation of the NYC Landmarks Law.
[6] The 2003 Lease Amendment is referenced at paragraphs 42 and 58 of the Complaint, but not attached. For the Court's convenience, the 2003 Lease Amendment is attached hereto at Tab A.

3

DINER trademark in the U.S. and in Europe.  (Cplt. ¶59).  As a result of those negotiations, Michael Feucht ("Feucht"), a German citizen associated with Plaintiff and its planned business partners, filed an application to register the mark THE EMPIRE DINER for restaurant services and other ancillary goods.  Feucht obtained International Registration No. 0946821 and filed an application to extend that registration to the United States.   Feucht was ultimately awarded U.S. Registration No. 3,489,046 for the mark THE EMPIRE DINER.  (Cplt. ¶60).   The Levinson Family filed a Petition to Cancel Feucht's registration for THE EMPIRE DINER mark, which is currently pending before the Trademark Trial and Appeal Board of the PTO as Cancellation No. 92051496 (the "Cancellation Proceeding") (Cplt ¶67).

Although Plaintiff claims that Feucht is not under its direction or control, there is no doubt that Feucht and Plaintiff are or intend to work together.  (See Cplt. ¶¶59-60).  Indeed, Plaintiff relies upon the existence of the Cancellation Proceeding as a basis for this Court's exercise of subject matter jurisdiction under the Declaratory Judgment Act.  (Cplt ¶67).  And, Feucht has done what Plaintiff could not--obtain a Federal registration for THE EMPIRE DINER mark.  Plaintiff clearly intends to benefit from Feucht's registration, yet it conveniently failed to include Feucht as a party to this action.

## II  ARGUMENT

### A. THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(7) OR IN THE ALTERNATIVE PLAINTIFF SHOULD BE ORDERED TO ADD MICHAEL FEUCHT AS A PARTY

Federal Rule of Civil Procedure 12(b)(7) permits a Court to dismiss a complaint for failure to join a party under Rule 19.  Fed. R. Civ. P. 12(b)(7).  The Complaint should be dismissed because Plaintiff failed to join Feucht, a necessary party and the owner of the U.S. trademark registration for the mark THE EMPIRE DINER.  Unless Feucht is made a party to this action, the Levinson Family will be unable to get complete relief and will be forced to defend its rights in multiple actions.

4

Federal Rule of Civil Procedure 19(a) provides:

> (a) Person Required to Be Joined if Feasible:
> (1)   Required Party.  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A)   In that person's absence, the court cannot accord complete relief among existing parties. . .

Fed. R. Civ. P. 19(a)(1)(A).

Under Rule 19(a), a Court "must decide whether considerations of efficiency and fairness, growing out of the particular facts of the case, require that a particular individual be joined as a party." *Total Petroleum Puerto Rico Corp. v. TC Oil, Corp.*, 634 F.Supp.2d 213, 216 (D.P.R. 2009).  Here, considerations of fairness and efficiency dictate that Feucht is a necessary party.

As an initial matter, Feucht is the owner of the U.S. trademark registration for the mark THE EMPIRE DINER for restaurant services and other related goods and services.  Although Plaintiff is claiming only common law rights in the EMPIRE DINER trademark, Plaintiff admitted in the Complaint that Feucht is related to certain third parties with which it intends to expand its use of the EMPIRE DINER trademark:

> Michael Feucht, a German national ***associated with the persons with whom the Plaintiff was negotiating to expand use of The Empire Diner trademark*** and trade dress, in anticipation of the successful culmination of a business arrangement, filed an International trademark application on October 16, 2008, and under the provisions of the Madrid Protocol, extended it to the United States and he was granted U.S. Trademark Registration 3,489,046, in [sic] August 19, 2008, for the Empire Diner logo for various goods and services.

(Cplt. ¶60; emphasis added).

The Levinson Family has petitioned to cancel the registration obtained by Feucht.  Evidence pertaining to the relationship between Plaintiff and Feucht will be relevant in both this action and the Cancellation Proceeding.  Plaintiff denies that Feucht acted under its direction (Cplt. ¶60), yet the fact remains that Feucht did what Plaintiff contractually agreed that it would never do.  Plaintiff knew that it

5

did not have the authority or permission of the Levinson Family to obtain a registration in the U.S. Whether Plaintiff informed Feucht of this information remains to be determined.[7]

Second, if Feucht is not joined in this action, the Levinson Family will be required to also maintain the Cancellation Proceeding in order to get complete and full relief, namely a declaration in this Court that it is the owner of the EMPIRE DINER trademark *and* cancellation of Feucht's registration for THE EMPIRE DINER.  *See, e.g., Secular Org. for Sobriety, Inc. v. Ullrich*, 213 F.3d 1125, 1132 (9th Cir. 2000) (Reversing District Court's dismissal of defendant's counterclaim for cancellation of plaintiff's trademark registration because had defendant prevailed "it would have enjoyed greater legal benefits than it received from the mere determination that it had established prior use.")[8].

If Feucht is joined as a necessary party, the PTO will likely suspend the Cancellation Proceeding. *See, e.g., General Motors Corp. v. Cadillac Club Fashions, Inc.*, 22 U.S.P.Q.2d 1933 (T.T.A.B. 1992) (suspending proceedings where relief sought in district court included an order directing the PTO to cancel the registration involved in the cancellation proceeding); 37 C.F.R. §2.117 ("Whenever it comes to the attention of the Board that a party or parties to a case pending before it are involved in a civil action which may have a bearing on the Board case, proceedings before the Board may be suspended until final determination of the civil action.").   Indeed, this Court has concurrent jurisdiction with the PTO and the authority to cancel Feucht's registration.  *See* 15 U.S.C. §1119 ("In any action involving a registered mark the court may determine the right to registration, order the cancellation of registrations, and otherwise rectify the register with respect to the registrations of any party to the

---

[7] Plaintiff's failure to join Feucht makes discovery of Feucht more difficult and expensive for the Levinson Family because Feucht will be a third party, residing outside the United States and subject to different rules than he would be as a party to this action.

[8] The fact that the plaintiff in *Secular Organization* was also the registrant does not undermine the point being made in the 9th Circuit's opinion.  Here, Feucht and Plaintiff have some relationship, the parameters of which are not yet known.  The fact remains that Feucht is a necessary party because of his relationship with Plaintiff and ownership of the related trademark registration which the Levinson Family seeks to cancel.

6

action.").[9]  Plaintiff's failure to join Feucht unfairly insulates Feucht's registration from judicial scrutiny, leaving the Levinson Family with incomplete relief and the need to separately adjudicate the validity of his registration.  Feucht is not some unrelated third party; he is a necessary party to this action.

In addition, Plaintiff relies on the existence of Feucht's registration and the Cancellation Proceeding filed by the Levinson Family as evidence that there is a case or controversy between the parties sufficient to establish subject matter jurisdiction in this Court over its Declaratory Judgment claims.  (See Cplt. ¶60).  Plaintiff should not be permitted to rely on these facts and then fail to join Feucht as a party.

Accordingly, Feucht should be found to be a necessary party under Rule 19(a)(1)(A).  The Complaint should be dismissed for failure to join Feucht or in the alternative, Plaintiff should be required to add Feucht as a party.

### B. THE COMPLAINT SHOULD ALSO BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6)

On a motion to dismiss under Rule 12(b)(6), "dismissal of a complaint is appropriate if the plaintiff has failed to offer sufficient factual allegations making the asserted claim plausible on its face." *Martinez v. Ravikumar*, 616 F. Supp.2d 455, 458 (S.D.N.Y. 2009).  While all of the factual allegations contained in the complaint must be accepted as true, "the court need not accord legal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness."  *In re Sadia, S.A. Secs. Litig.*, 643 F.Supp.2d 521, 524 (S.D.N.Y. 2009) (citations omitted).  The Court is to "assess the

---

[9] Despite the fact that there is apparently some business arrangement between Plaintiff and Feucht, Plaintiff does not allege that it is Feucht's exclusive licensee of THE EMPIRE DINER trademark.  Accordingly, those cases which hold that the trademark registrant is not a necessary party because the plaintiff had the right to sue for infringement are inapposite here.  *See, e.g., Total Petroleum,* 634 F.Supp.2d at 217 (trademark registrant not necessary party under Rule 19(a) where, by contract, it had delegated obligation to sue for infringement to plaintiff); *Idaho Potato Commission v. Washington Potato Commission,* 410 F. Supp. 171, 174 (D. Id. 1975) (State of Idaho not a necessary party where, by statute, the Idaho Potato Commission had the right to sue despite the fact that the State was the trademark registrant).

7

legal feasibility of the complaint, not to assay the weight of evidence which might be offered in support thereof." *In re Initial Publ. Offering Secs. Litig.*, 383 F.Supp.2d 566 (S.D.N.Y. 2005).

In deciding a motion to dismiss under Rule 12(b)(6), the Court is not limited to the face of the complaint. It may also consider any documents attached or incorporated into the complaint by reference as well as "documents possessed by or known to the plaintiff upon which it relied in bringing the suit." *In re Sadia*, 643 F.Supp.2d at 524; *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 531 F.Supp.2d 620, 622 (S.D.N.Y. 2008).

Plaintiff knows of and possesses the 2003 Lease Amendment and specifically referenced it in the Complaint. (See Cplt. ¶¶42, 58). Accordingly, although Plaintiff did not attach the 2003 Lease Amendment as an Exhibit to the Complaint, the Court may consider it in deciding this Motion. A copy is attached at Tab A hereto.

In 2002, Plaintiff quietly filed an application to register the EMPIRE DINER mark with the PTO. (Cplt. ¶57) Plaintiff did not notify the Levinson Family of this filing, nor did it obtain the permission or authorization of the Levinson Family. Upon discovery of the unauthorized trademark application, the Levinson Family insisted that Plaintiff withdraw the application and abandon its efforts to register the EMPIRE DINER trademark. This agreement was documented in the 2003 Lease Amendment which provides the following:

> Immediately upon the execution and delivery of this Amendment to Lease, ***[Plaintiff] shall withdraw its pending application to the United States Trademark Office for the registration of the federal service mark "Empire Diner,"*** and ***covenants not to re-file or otherwise pursue such application***.

(2003 Lease Amendment ¶15; emphasis added).

Even taking all of the factual allegations as truthful, the Complaint must nonetheless be dismissed because paragraph 15 of the 2003 Lease Amendment establishes that Plaintiff has no rights in the EMPIRE DINER trademark. Plaintiff plainly agreed in paragraph 15 of the 2003 Lease Amendment that it would not pursue or attempt to register the mark EMPIRE DINER with the PTO. Even if Plaintiff

8

believed that it had rights to the EMPIRE DINER trademark at that time, it relinquished any such rights by signing the 2003 Lease Amendment.

Indeed, knowing full well that the Levinson Family owned all rights to the EMPIRE DINER trademark, Plaintiff's 2002 application contained false statements made under penalty of perjury. *See* TRADEMARK MANUAL OF EXAMINING PROCEDURE §804.01 (2009) (hereafter "TMEP"). Further pursuit of another application to register the EMPIRE DINER mark with the PTO would have again required Plaintiff to make false statements under penalty of perjury. Specifically, the Lanham Act requires that a trademark applicant verify based on personal knowledge and under penalty of perjury that it:

> ***believes the applicant to be the owner of the mark and that no one else, to the best of his or her knowledge and belief, has the right to use the mark in commerce***, either in identical form or in such near resemblance as to be likely, when applied to the goods or services of the other person, to cause confusion or mistake, or to deceive.

15 U.S.C. §1051(b)(3)(A) (emphasis added); *see also* 37 C.F.R. §2.33(b)(2); TMEP §804.02.[10]

Thus, by agreeing not to pursue another application to register EMPIRE DINER, Plaintiff was essentially acknowledging that it could not have truthfully made the required verification concerning ownership of the mark because the EMPIRE DINER mark was and is owned by the Levinson Family.

Admittedly, paragraph 15 of the 2003 Lease Amendment is silent with respect to Plaintiff's continued use of the EMPIRE DINER mark. The reason for such silence is clear and obvious. At that time, Plaintiff was the lessee of the Property, the licensee of the EMPIRE DINER trademark and was providing restaurant services under that mark. Plaintiff's lease and implied license was not scheduled to terminate for at least six years. It was expected and in fact Plaintiff did continue to use the EMPIRE DINER trademark during that time. Accordingly, there was no reason to address that issue in the 2003 Lease Amendment.

---

[10] Feucht was also required to make a similar statement under penalty of perjury. *See* 15 U.S.C. §1141(5); TMEP §804.05.

9

Plaintiff apparently sought to get around this provision by using Feucht, its business associate to register THE EMPIRE DINER trademark in the U.S. However, as a matter of law Plaintiff is barred from claiming rights in the EMPIRE DINER trademark by the terms of the 2003 Lease Amendment. For that reason, the Complaint should be dismissed in its entirety.

III    **CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed in its entirety under Rules 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure.

Date:   May 28, 2010                             BENJAMIN LAW PC

                                                 By: _____
                                                 Amy J. Benjamin (AB6886)
                                                 111 East 14th Street
                                                 Suite 469
                                                 New York, New York 10003
                                                 (212) 673-8350
                                                 amy@benjaminlawpc.com

                                                 Attorneys for Defendants

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 28, 2010, a true copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DIMISS THE COMPLAINT was served on counsel for the Plaintiff via ecf filing and first class mail, postage prepaid as follows:

Angelo Notaro
John Zaccaria
Notaro, Michalos & Zaccaria, P.C.
1270 Broadway, Suite 807
New York, New York 10001
*Attorneys for Plaintiff*
Nothing Heavy, Inc.

_____