
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 06 DEC 2010

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NOTHING HEAVY INC.,

                        Plaintiff,

  -v-

CHARLES LEVINSON, as Trustee Under the
Arthur and Madelyn Levinson Revocable Trust
Under Declaration of Trust Dated November 29,
1990, et al.

                        Defendants.

<u>MEMORANDUM DECISION AND ORDER</u>

10 cv 03466 (GBD)

GEORGE B. DANIELS, District Judge:

      Plaintiff Nothing Heavy Inc. brings this action against its former landlord Charles Levinson, as Trustee Under the Arthur and Madelyn Levinson Revocable Trust Under Declaration of Trust Dated November 29, 1990, Robin Roselund, as Executrix of the Estate of Lois Maleman f/k/a Lois Brown and as Executrix of the Estate of Norman Levinson and Bertram Levinson Family, LLC, and Bertram Levinson Family, LLC, (collectively "Defendants"). Plaintiff asserts claims for: (Count II) false designation of origin of services and goods and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (Count III) infringement of common law service marks; (Count IV) trade name infringement; and (Count V) common law unfair competition. Plaintiff also labels as a claim its request for (Count I) declaratory relief of ownership THE EMPIRE DINER trademark, trade name, and trade dress; Defendants now move pursuant to FED. R. CIV. P. 12(b)(6) to dismiss the Complaint.[1]

---

[1] Defendants initially moved in the alternative pursuant to Rule 12(b)(7), arguing that Plaintiff should be ordered to join Michael Feucht, a German national who was granted U.S. Trademark Registration No. 3,489,046 for THE EMPIRE DINER in August 2008, as a party. Complaint at ¶ 60. Defendants withdrew the 12(b)(7) portion of their Motion to Dismiss in a

1

## MATERIAL FACTS

Defendants own the property and buildings located at 210-212 Tenth Avenue, New York, New York (the "Property"). Complaint Ex. C at ¶ 2. The brother of Bessie Levinson, one of the original purchasers, id. at ¶¶ 3, 4, placed a diner named Empire Diner on the Property and began providing restaurant services in the early 1930s. Id. at ¶ 12. Arthur Levinson, Bessie's son, purchased Empire Diner in or about 1950, id. at ¶¶ 4, 14, and he managed and provided restaurant services under the same name until he retired in 1974. Id. at ¶ 15.

In 1975, Plaintiff leased the property from Arthur, who acted as an agent for Defendants and their predecessors. Id. at ¶ 15. From 1976 to 2009, Plaintiff leased the Property and operated a restaurant named Empire Diner. Complaint at ¶ 12, 42. Because the Property was a "closed machine shop" and "a closed, dilapidated diner," Plaintiff conducted substantial renovations such as creating a kitchen outside of the diner area and creating a separate dining room in the former machine shop building. Id. at ¶¶ 15-16. Plaintiff also dressed the interior of the diner in a black and stainless steel/chrome and mirrored motif and added the following distinctive features: (1) a steel model simulating the Empire State Building on the roof, (2) a New York skyline stenciled on one of the walls; (3) a marquee with traveling lights; (4) an illuminated billboard-size stylized sign of the word "EAT"; and (5) a distinctive graphic lettering style for the restaurant logo "The Empire Diner." Id. at ¶¶ 16-18.

In May 2002, Plaintiff filed a trademark application to register EMPIRE DINER for restaurant services. Id. at ¶ 57. Defendants demanded that Plaintiff withdraw its application, as

---

letter dated November 10, 2010.

reflected in the 2003 Lease Amendment,[2] in exchange for providing the consent necessary to amend Plaintiff's outdoor sidewalk café license. Id. at ¶ 56, 58. That concessionary provision read as follows:

> Immediately upon the execution and delivery of this Amendments to Lease, Lessee shall withdraw its pending application to the United States Trademark Office for the registration of the federal service mark "Empire Diner," and covenants not to re-file or otherwise pursue such application.

Def. Ex. A. ¶ 15.

In 2007, Plaintiff began negotiations with third parties to expand the use of THE EMPIRE DINER trademark and trade dress to other locales in the United States and abroad. Id. at ¶ 59. Michael Feucht, a German national associated with persons with whom the Plaintiff was negotiating to expand use of the trademark and trade dress, filed an international trademark application in October 2007 in anticipation of the successful culmination of a business arrangement. Id. at ¶ 60. Under the provisions of the Protocol Relating to the Madrid Agreement Concerning the International Registration of Marks, Mr. Feucht extended the trademark to the United States and was granted U.S. Trademark Registration No. 3,489,046 in August 2008. Id. Plaintiff alleges that Mr. Feucht did not act under its direction or control. Id.

In 2009, during negotiations for the extension and/or renewal of the lease that was scheduled to expire at the end of the year, the dispute over THE EMPIRE DINER trademark, trade dress, and

---

[2] It is appropriate to consider the 2003 Amendment, even though it was not attached to Plaintiff's Complaint, because Plaintiffs both note the existence and discuss the contents of the 2003 Lease Amendment in paragraphs 42-51 of the Complaint. See Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion).

trade name arose. Id. at ¶ 61. In January 2009 and September 2009, Plaintiff asserted an ownership claim pursuant to its counsel's legal opinion. Id. at ¶ 62, 66. On September 23, 2009, Defendants commenced an inter partes proceeding before the Trademark Trial and Appeal Board of the United States Patent and Trademark Office seeking to cancel Mr. Feucht's registration. Id. at ¶ 67. Then on October 5, 2009, Defendants took the position that it possessed an ownership claim: "any attempt 'to use or exploit THE EMPIRE DINER trademark or trade dress after it vacates the property may constitute a violation of the Defendants' intellectual property rights under federal and state law. In addition, . . . the Levinsons intend to continue exercising their intellectual property rights by operating a restaurant and providing other services through a new lessee at the Property." Id. at ¶ 68. Although the parties reached a verbal agreement on November 25, 2009, to extend the lease and provide the Defendants with a membership interest in a new limited liability company which would license and/or franchise EMPIRE DINER trademark, Defendants subsequently signed a lease with another party. Id. at ¶ 69, 71. Plaintiffs vacated the premises by May 21, 2010. Id. at ¶ 72.

Plaintiff commenced this suit for declaratory relief for several reasons. First, Defendants seek to cancel U.S. Trademark Registration No. 3,489,046 that is separately held by the German National Mr. Feucht. Defendants argue that Plaintiff was granted an implied license to THE EMPIRE DINER trademark and that the license expired on December 31, 2009, and has now been transferred to a new lessee. Id. at ¶¶ 74, 75. Second, Defendants have threatened that any use by Plaintiff of THE EMPIRE DINER trademark, trade name, and trade dress after the Plaintiff left the premises may constitute a violation of intellectual property rights of Defendants under federal and state law. Id. at ¶¶ 76, 77. Finally, Defendants have stated that they intend to use THE EMPIRE DINER trademark, trade name, and trade dress and, as well, license others to do so in rendering restaurant services in New York City. Id. at ¶ 78.

Plaintiff alleges that it has continuously used and exclusively controlled THE EMPIRE DINER trademark,[3] trade dress,[4] and trade name[5] at all time since 1976. Id. at ¶ 35. Plaintiff further alleges that, as a consequence of its "hard work, investment, and business acumen," the trademark, trade dress, and trade name "have become closely identified by the public with the restaurant services, products and business of Plaintiff and have gained widespread public recognition throughout the City of New York, nationwide and internationally." Id. at ¶ 36.

Plaintiff contends that none of the leases, amendments, or extensions contain provisions pertaining to the manner of use of THE EMPIRE DINER trademark, trade name and trade dress by Plaintiff in connection with its restaurant services. Id. at ¶ 50. The leases are not labeled as trademark licenses. Id. at ¶ 51. Defendants and their predecessors made no commercial trademark use whatsoever between 1976 and 2010. Id. at ¶ 54. Plaintiff decided to use THE EMPIRE DINER trademark and trade name at its sole discretion. Id. at ¶ 49. Additionally, Plaintiff contends that, for nearly 35 years, Defendants and their predecessors have not exercised any control over Plaintiff's restaurant services, nor have they had any right to do so pursuant to the leases. Id. at ¶ 52-53. Plaintiff also contends that Defendants never supervised nor had a role in the restaurant's management and operation, or its nature or quality of services. Id. at ¶¶ 43-48.

## STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, a party may dismiss a complaint for "failure

---

[3] Plaintiff has used the trademark on various products sold to consumers in the ordinary course of business, such as t-shirts and coffee mugs. Id. at ¶ 21.

[4] Plaintiff has used the trade dress in interstate commerce, advertising, magazines, newspapers, travel publications, diner books, movies, and music videos. Id. at ¶¶ 18, 20.

[5] Plaintiff registered the trade name "Empire Diner" as an assumed business name with the New York Secretary of State in December 1979. Id. at ¶ 22. Then, in 1985, Plaintiff registered the trade name "The Empire Diner" with the same state agency. Id. at ¶ 23.

to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A Rule12(b)(6) motion is available to any party wishing to challenge the formal sufficiency of a claim whether it is made in a complaint, counterclaim, cross-claim, or third party claim." Telectronics Proprietary. Ltd. v. Medtronic. Inc., 687 F. Supp. 832, 836 (S.D.N.Y. 1988); see also Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 238 (2d Cir. 2008); Williams & Sons Erectors. Inc. v. South Carolina Steel Corp., 983 F.2d 1176, 1180 (2d Cir. 1993).

In reviewing the sufficiency of a motion to dismiss, this Court construes the Complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiffs favor." Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

The plaintiff must also demonstrate that the Complaint contains "enough facts to state a claim of relief that is plausible on its face." Bell Atl. Corp, 550 U.S. at 570; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). However, "[s]weeping legal conclusions cast in the form of factual allegations do not suffice to state a claim even at the Rule 12(b)(6) stage." Law Offices of Curtis v. Trinko. L.L.P., 309 F.3d 71, 74 (2d Cir. 2002) (quoting 5A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1990)). "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." Id. (quoting Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996)).

## 12(b)(6) MOTION TO DISMISS

Defendants argue that the 2003 Lease Amendment establishes Defendants' ownership of THE EMPIRE DINER trademark, trade dress, and trade name and that Plaintiff is barred from asserting claims that require rights in the THE EMPIRE DINER trademark. Defendants contend that Plaintiff was a licensee of THE EMPIRE DINER trademark during its tenancy, and that the

Plaintiff has no rights and/or relinquished any rights in THE EMPIRE DINER trademark in the 2003 Lease Amendment.

The 2003 Lease Amendment is the only formalized agreement between the parties that addresses THE EMPIRE DINER trademark. Reading the contract language in the light most favorable to Plaintiff, the agreement unambiguously requires Plaintiff to forgo trademark registration – nothing else. Plaintiff's covenant means that Plaintiff relinquished its right to become a registrant, which confers certain benefits to trademark owners, but is not the only avenue for acquiring trademark rights. See 15 U.S.C. § 1127 ("trademark"). Based solely on the contract language, the covenant cannot be reasonably construed to bear on any common law trademark rights claimed to have been already acquired by Plaintiff. Nor can it be construed as an admission that Plaintiff lacks trademark rights. The 2003 Amendment is thus not dispositive. There are simply insufficient facts at the moment to conclude that Defendants are, as a matter of law, the owners of THE EMPIRE DINER trademark.

Plaintiff appropriately alleges a declaratory judgment action. "[A] district court is required to entertain a declaratory judgment action '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding.'" Starter Corp. v. Converse, Inc., 84 F.3d 592, 597 (2d Cir. 1996) (quoting Continental Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734 (2d Cir. 1992)). Here, a judgment will resolve the demonstrated uncertainty between the parties that generated this controversy, and a judgment will serve a useful purpose by identifying which, if either, of the parties owns THE EMPIRE DINER trademark and thus may lawfully proceed with its planned business ventures. Plaintiff's claim for declaratory judgment thus states a claim upon which relief can be granted. Therefore,

the claim is not dismissed. Plaintiff's remaining claims are contingent upon a favorable declaratory judgment and are also not dismissed at this time.

## CONCLUSION

Defendants' motion to dismiss Plaintiff's Complaint is DENIED.

Dated: New York, New York
    December 2, 2010

SO ORDERED:

*[signature]*

GEORGE B. DANIELS
United States District Judge